IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-CV-99

| | |
|---|---|
| MAACO FRANCHISING, LLC, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| STEFANO GHIRIMOLDI, | ) |
| and | ) |
| LUMAT, LLC, d/b/a AMERICA BODY SHOP, | ) |
| Defendants. | ) |

THIS MATTER is before the Court upon Plaintiff Maaco Franchising, LLC's ("Maaco") Motion for a Preliminary Injunction (Doc. No. 1), Maaco's Memorandum of Law in Support of its Motion for a Preliminary Injunction (Doc. No. 1–1), Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. No. 11), and Maaco's Reply Brief in Support of Motion for Preliminary Injunction. (Doc. No. 19). Maaco seeks to enjoin Defendants' alleged infringing use of protected Maaco trademarks and violation of a covenant not to compete set forth in the Franchise Agreement between the parties. For the reasons set forth below, the Motion is **DENIED.**

## I. BACKGROUND

Maaco is a franchisor of automobile paint and body shops under the name "Maaco." It files this action on the basis of a Franchise Agreement entered into with Defendant Ghirimoldi on February 23, 2012. Ghirimoldi subsequently created Lumat LLC ("Lumat") and through it purchased an automobile paint and body shop called Complete Body with the intent to operate it as a Maaco franchise. After purchasing Complete Body, Defendants executed the Assignment and

Assumption Agreement with Maaco, assigning Lumat the rights and duties under the Franchise Agreement.

At some point between February 23, 2012 and July 1, 2012, Ghirimoldi attended a Maaco training session at Maaco's headquarters in King of Prussia, Pennsylvania. Defendants opened the Maaco franchise at Complete Body's former location on July 1, 2012. Pursuant to the Franchise Agreement, Defendants purchased Maaco-branded exterior and interior signs to display in and around the shop, including one that spreads across the top of the exterior of the building reading "America's Body Shop."

Under the Franchise Agreement, Maaco had the sole right to create and maintain internet websites and a directory listing for Defendants' franchise. (Doc. No. 1 Exh. 1 at §6.1 ¶¶ D, H). Maaco did not establish internet advertising postings for the shop until sometime after September 1, 2012. Defendants learned of Maaco's failure to do so from a customer, who emailed Ghirimoldi about his inability to find the shop on Google. Defendants stopped paying franchise and advertising fees to Maaco in November 2012. On November 26, 2012, Maaco sent Defendants a Notice of Default for their failure to remit all franchise fees and advertising contributions and gave Defendants thirty days to cure their defaults or else be subject to termination of their franchise license. Defendants failed to cure their defaults, and on December 28, 2012, Maaco sent them a Notice of Termination informing them that their franchise was terminated as of that date.

Under the terms of the Franchise Agreement, Defendants had several duties to perform upon termination of the franchise. The duties include ceasing to use any "Proprietary Marks and distinctive forms" including "all signs" which display Proprietary Marks, canceling any assumed name or equivalent registration which contains any service mark or trademark of Maaco, notifying "the telephone company and all listing agencies of the termination or expiration of Franchisee's

right to use all telephone numbers" of the Center, returning to Maaco "all manuals, including the [operations] Manual" and complying with the Franchise Agreement's covenant not to compete.[1] (Doc. No. 1 Exh. 1 at §16 ¶¶ B, D, G, H). A clause also authorized Maaco to direct the telephone company and all listing agencies to transfer the telephone number to itself should Defendants fail to do so. (*Id* at ¶ D).

After receiving the Notice of Termination, Defendants continued operating as an automobile paint and body shop. They removed exterior Maaco signs, obscured interior Maaco signs, and changed the name of the business to "America Body Shop." They repurposed a sign originally purchased at Maaco's direction that read "America's Body Shop" to depict "America Body Shop" by removing the "'s." Defendants also retained the shop's phone number (602) 252-2455. Defendants allege they "put away" Maaco's confidential information, including the operating manuals. Defendants have not received any communication from Maaco until the filing of this lawsuit.

Since termination, Maaco has not attempted to get back its branded signs or confidential materials, such as the operations manual, and has not requested that Defendants transfer the telephone number. On an unstated date, Maaco's current regional director visited "America Body Shop" and took photos of the exterior of the shop, but did not speak to Defendants. The regional director also found that the shop was still listed as a Maaco franchise on both Yelp.com and YellowPages.com. Maaco filed this action on March 3, 2015, more than two years after it terminated the franchise.

---

[1] The covenant not to compete contained in the Franchise Agreement directs Defendants, for a period of one year after termination, to refrain from operating or maintaining a motor vehicle painting or body repair services or products at the premises of the former franchise, or within a radius of ten (10) miles of the former franchise or any Maaco location that was in existence at the time Defendants signed the Franchise Agreement.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 222 (2008); *See also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). When considering whether to grant a preliminary injunction, the Fourth Circuit applies the standard articulated by the Supreme Court in *Winter. See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009) (overruled on other grounds). Under *Winter*, a plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits; [2] that he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of equities tips in his favor; and [4] that an injunction is in the public interest." 575 F.3d at 346 (quoting *Winter,* 129 55 U.S. at 20).

In considering a motion for a preliminary injunction, the Fourth Circuit has not adopted the view taken by other circuits that a "presumption [of irreparable harm] arises solely from the finding of [trademark] infringement." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 939 (4th Cir. 1995). *See also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002) ("This court has never spoken directly to the applicability of such a presumption of harm in Lanham Act cases."). Furthermore, the Fourth Circuit has explicitly rejected the notion that self-inflicted harm should be given less weight when considering the balance of hardships. In *Scotts Co.*, the court held that "[i]f self-made harm is given substantially less weight…then the balance of the harms will almost always favor Plaintiff, thus transforming a preliminary injunction from an extraordinary remedy into a routine occurrence." 315 F.3d at 284. *See also Prosperity Sys., Inc. v. Ali,* 2010 WL 5174939, at *5 (D. Md. Dec. 15, 2010) ("The Fourth Circuit, however,

bars a court from giving "short shrift" to the harm a defendant might suffer merely because it is self-inflicted.").

## III. DISCUSSION

### A. Demonstration of Irreparable Harm

There is no dispute Maaco waited over two years to attempt to enforce its rights with a preliminary injunction. In *Winter*, the Supreme Court held that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that Plaintiff is entitled to such relief." *Winter,* 129 S.Ct. at 375-76. To establish irreparable harm, Maaco must demonstrate it is suffering loss of goodwill or permanent loss of customers to a competitor. *See Southtech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 418 (E.D.N.C. 2006); *see also Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551–52 (4th Cir.1994).

With regard to its trademark infringement claim, Maaco alleges that Defendants' alleged infringement will "seriously erode and damage" its "goodwill, commercial reputation, name, logo, and marks, and will continue to cause confusion, mistake, and deception among the consuming public, including particularly those persons seeking authorized Maaco products and services" and thereby cause Maaco to suffer irreparable harm. (Doc. No. 1 at 14–15). Furthermore, Maaco argues both it and its authorized franchisees will "continue" to suffer irreparable harm "in the form of lost customers and corresponding lost sales." (Doc. No. 19 at 9).

Maaco fails to make a clear showing of irreparable harm beyond these conclusory statements. Defendants have operated America Body Shop for two-and-a-half years, yet Maaco presents no evidence that the alleged infringement during that significant period of time has actually resulted in "erosion" of its goodwill or commercial reputation. It also presents no evidence

indicating permanent loss of customers and sales. If lost sales or erosion of goodwill and reputation have not occurred during the previous two-and-a-half years, it is not credible for Maaco to claim that they are now imminent or likely. *See Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 382 (D.N.J. 2002) ("Any claim to irreparable injury is undercut by [plaintiff's] lengthy and inexcusable delay [of less than two years] in bringing this action for preliminary injunctive relief."). As a result, the Court concludes that Maaco is not suffering and is not likely to suffer irreparable harm from Defendants' use of "America Body Shop" or the phone number.

Similarly, Maaco fails to show irreparable harm arising out of Defendants' alleged breach of contract. Maaco argues that allowing Defendants to "use the Maaco know-how and training to establish their own collision repair and automotive painting center in the same area" would be "extremely injurious" to Maaco and make it difficult or impossible for it to re-establish a Maaco franchise in the area. (Doc. No. 1 at 21–22). However, for reasons already stated, the delay in filing this action and Maaco's failure to attempt to re-establish a franchise in the area for the past two-and-a-half years undermine its assertion that it is being irreparably harmed by Defendants' continued operation. Therefore, Maaco has failed to demonstrate that it is likely to suffer or has already suffered irreparable harm and Maaco's Motion for Preliminary Injunction must be denied.

### B. Likelihood of success on the merits

#### 1. Trademark Infringement Claim

The Court need not address Maaco's likelihood of success on the merits, as Maaco has so obviously failed to carry its burden to establish irreparable harm. Nonetheless, the Court will briefly address this prong. Maaco alleges that Defendants have "deliberately and intentionally used Maaco's federally registered name, logo, and marks in interstate commerce without Maaco's permission or authority" in violation of the Lanham Act, 15 U.S.C. §§ 1116, 1118. (Doc. No. 1 14-15). A review of Maaco's Complaint shows that the only relevant marks alleged to be currently

used by Defendants are the "America's Body Shop" sign that Defendants altered to read "America Body Shop," and the former franchise phone number.

To succeed on a claim of trademark infringement, the "complainant must demonstrate that it has a valid, protectible [sic] trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers. *See* 15 U.S.C. § 1114(1)." *Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 930. Title 15, United States Code Section 1057(b) establishes that "[a] certificate of registration of a mark upon the principal register…shall be *prima facie* evidence of the validity of the registered mark…and of the owner's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1057(b). In *George & Co. LLC v. Imagination Entertainment Ltd.*, the Fourth Circuit noted that "unlike principal registration, supplemental registration is not *prima facie* evidence of the validity of the registered mark, of ownership of the mark, or of the registrant's exclusive right to use the registered mark in commerce." 575 F.3d 383, n. 8 (4th Cir. 2009). Furthermore, the Fourth Circuit has held that it is "obligated to defer to the determination of the U[nited ]S[tates ]P[atent and ]T[rademark ]O[ffice], which constitutes *prima facie* evidence of whether a mark is descriptive or suggestive" when determining whether a mark receives protection. *Id.* at 394. With regards to customer confusion, the Fourth Circuit requires the plaintiff to present "evidence of deception" at the preliminary injunction stage. *See Scotts Co.*, 315 F.3d at 264 ("Customer confusion is most often proved by consumer survey data . . . but full-blown consumer surveys . . . are not an absolute prerequisite at the preliminary injunction stage. Nevertheless, the movant—even at the preliminary injunction stage—must present evidence of deception.").

With regard to the "America Body Shop" sign, Maaco alleges "America's Body Shop" is a protected mark. (Doc. No. 1 at 8, ¶ 34). However, Defendants submit evidence which indicates

Maaco's application to register "America's Body Shop" on the principal trademark register was explicitly rejected by the United States Patent and Trademark Office because the mark is "primarily geographically descriptive of the applicant's goods/services."[2] (Doc. No. 11 Exh. B). Maaco then applied to register the mark on the supplemental register, which allows for registration of descriptive marks, and the supplemental registry application was accepted. (Doc. No. 11 at 21). Accordingly, the United States Patent and Trademark Office's determination that "America's Body Shop" is a descriptive mark is *prima facie* evidence that the mark is descriptive. *See* 15 U.S.C. § 1057(b).

Descriptive marks require a showing of secondary meaning before they receive trademark protection. *George & Co. LLC*, 575 F.3d at n. 8; *see also Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 538 (4th Cir. 2004). Secondary meaning exists if "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Maaco submits no evidence of a secondary meaning of "America's Body Shop." Evidence submitted by Defendants shows the existence of twelve other body shops called some variation of "America Body Shop." (Doc. No. 11 at 20). Finally, Maaco presents no evidence to demonstrate that the "America's Body Shop" mark is a protected mark at all beyond noting that the company added an "®" symbol to the original "America's Body Shop" sign, an action which has no legal significance. Defendants have raised significant factual issues regarding whether Maaco owns a valid, protected

---

[2] Maaco's argument that Defendants are estopped from contesting the validity of the "America's Body Shop" mark by the doctrine of licensee estoppel (Doc. No. 19 at 5) is not relevant to the instant case. "America's Body Shop" was never a protected mark on the principal trademark registry and Defendants never recognized its validity. *See Kebab Gyros, Inc. v. Riyad*, 2009 WL 5170194, at *7 (M.D. Tenn. Dec. 17, 2009) (holding that "it is not in the interest of equity for the doctrine of 'licensee estoppel' to bar a legitimate examination into whether the plaintiff ever had a protectible [sic] mark" where the USPTO rejected the registration and designated the mark merely descriptive and the former licensee did not contractually recognize the validity of the mark).

trademark in "America's Body Shop." It is therefore impossible for this Court to conclude that Maaco is likely to succeed on the merits of its trademark infringement claim with regard to "America's Body Shop."

Maaco also seeks an injunction directing Defendants to release or transfer the phone number previously associated with the shop during its manifestation as a Maaco franchise based on 15 U.S.C. §§ 1116 and 1118. Maaco does not allege that it registered the phone number as a trademark with the United States Patent and Trademark Office on the principal register. Therefore, there is not a presumption that it is a valid service mark, and "[t]o ascertain whether a mark is protected, [the court] must determine whether it is 1) generic, 2) descriptive, 3) suggestive or 4) arbitrary or fanciful." *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 523 (4th Cir. 2002). The phone number is not suggestive, arbitrary or fanciful. *See Id.* (holding that fanciful marks consist of "made-up words expressly coined to serve as trade or service marks," arbitrary marks consist of "common words applied in unfamiliar ways," and suggestive marks consist of "words that connote, rather than describe, some quality or characteristic of a product or service"). Generic marks do not receive protection. *Id.* Descriptive marks receive protection only if they acquire a secondary meaning, and Maaco does not submit evidence demonstrating that customers associate the phone number with the Maaco brand based on the numbers alone. *See id.* As a result, it is impossible for the Court to conclude that Maaco is likely to succeed on the merits of its trademark infringement claim with regard to the phone number.

Even if Maaco did present sufficient evidence for this Court to conclude it is likely to demonstrate it owns a valid, protected trademark in either "America's Body Shop" or the phone number, it has submitted no evidence to meet its burden of demonstrating a likelihood of confusion

among customers due to Defendants' use of a similar mark.[3] *See Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 930. This burden requires Maaco to submit evidence of deception. *See Scotts Co.*, 315 F.3d at 264. As a result, it is impossible for this Court to conclude that Maaco is likely to succeed on the merits of its trademark infringement claims.

### 2. Breach of Contract Claim

Maaco also seeks to enforce the covenant not to compete contained in the Franchise Agreement, which directs Defendants to refrain from, for a period of one year,

> directly or indirectly for [themselves] or through, on behalf of, or in conjunction with any other person, persons, partnership, or corporation: (a) diverting or attempting to divert any business or consumer of Center M2495 to any competitor, by direct or indirect inducement or otherwise; (b) doing or performing, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the Maaco System; or (c) owning, maintaining, engaging in, being employed by, financing, assisting, or having any interest in any other business providing, in whole or in part, motor vehicle painting or body repair services or products at the premises of Center M2495 or within a radius of ten (10) miles of the Center, or of any Maaco location that was in existence at the time Defendants signed the Franchise Agreement

(Doc. No. 1 at 13–14).

Maaco's breach of contract claim is considered under North Carolina state law. The Court of Appeals of North Carolina held in *Combined Ins. Co. of Am. v. McDonald* that "[i]njunctive relief to enforce the terms of a contract will not be granted a party who has himself breached the

---

[3] Maaco argues at length that confusion is likely because the Fourth Circuit recognized in *M. Kramer Manufacturing Co. v. Andrews* that "courts have almost unanimously presumed a likelihood of confusion upon a showing that the defendant intentionally copied Plaintiff's trademark or trade dress." 783 F.2d 421, 448 (4th Cir.1986). However, Maaco's supporting cases are distinguishable from the instant case as they all consider defendants who intentionally copied a trademark in order to pass off their goods or services as related to or provided by the plaintiffs. As a result, the presumption of likelihood of confusion due to intentional copying is not applicable. Similarly, Maaco's argument that there is a presumed likelihood of confusion when an offending mark is used by a former licensee is not applicable. The cases it cites supporting this argument are distinguishable as they all involve former licensees who continue to use unaltered and extremely recognizable marks of a licensor after the license agreement was terminated.

terms of the contract when his breach is substantial and material and goes to the heart of the agreement." 243 S.E.2d 817, 819 (N.C. App. 1978).

Defendants claim that Maaco breached the Franchise Agreement so substantially and materially that injunctive relief is not available to it. *See id.* ("Injunctive relief to enforce the terms of a contract will not be granted a party who has himself breached the terms of the contract when his breach is substantial and material and goes to the heart of the agreement."). Under North Carolina law, whether "failure to perform a contractual obligation is so material as to discharge other parties to the contract from further performance . . . is a question of fact which must be determined by the jury or . . . by the trial court without a jury." *Id.* at 820. Thus in order to determine whether Maaco is likely to succeed on the merits of its breach of contract claim, evidence presented by both parties must be considered to make a determination of whether Maaco materially breached the Franchise Agreement and therefore discharged Defendants from their obligations.

Defendants allege Maaco failed to provide the following as contractually required by the Franchise Agreement: (1) on-site training; (2) grand opening planning and advertising; (3) national advertising and internet presence; (4) proper signage for the franchise; and (5) national contracts. Defendants state that Maaco's breach undermined "the very reason Defendants sought out Maaco" and "Defendants' ability to succeed as a Maaco franchise."(Doc. No. 11 at 11–12). Defendants submit evidence that Maaco failed to place online advertisements for their business for two-and-a-half months after opening, as well evidence from a potential customer that the failure to do so caused Defendants' shop to lose business. Defendants also allege Ghirimoldi did not receive any onsite training as required by the Franchise Agreement. The Ghirimoldi Declaration states that a field director did come to the shop "for a brief period" in August 2012, but did not provide the onsite training. (*See* Doc. No. 12 at 4). Ghirimoldi claims that as a result, "all or a considerable

terms of the contract when his breach is substantial and material and goes to the heart of the agreement." 243 S.E.2d 817, 819 (N.C. App. 1978).

Defendants claim that Maaco breached the Franchise Agreement so substantially and materially that injunctive relief is not available to it. *See id.* ("Injunctive relief to enforce the terms of a contract will not be granted a party who has himself breached the terms of the contract when his breach is substantial and material and goes to the heart of the agreement."). Under North Carolina law, whether "failure to perform a contractual obligation is so material as to discharge other parties to the contract from further performance . . . is a question of fact which must be determined by the jury or . . . by the trial court without a jury." *Id.* at 820. Thus in order to determine whether Maaco is likely to succeed on the merits of its breach of contract claim, evidence presented by both parties must be considered to make a determination of whether Maaco materially breached the Franchise Agreement and therefore discharged Defendants from their obligations.

Defendants allege Maaco failed to provide the following as contractually required by the Franchise Agreement: (1) on-site training; (2) grand opening planning and advertising; (3) national advertising and internet presence; (4) proper signage for the franchise; and (5) national contracts. Defendants state that Maaco's breach undermined "the very reason Defendants sought out Maaco" and "Defendants' ability to succeed as a Maaco franchise."(Doc. No. 11 at 11–12). Defendants submit evidence that Maaco failed to place online advertisements for their business for two-and-a-half months after opening, as well evidence from a potential customer that the failure to do so caused Defendants' shop to lose business. Defendants also allege Ghirimoldi did not receive any onsite training as required by the Franchise Agreement. The Ghirimoldi Declaration states that a field director did come to the shop "for a brief period" in August 2012, but did not provide the onsite training. (*See* Doc. No. 12 at 4). Ghirimoldi claims that as a result, "all or a considerable

part of the $10,000 fee for Initial Training and Opening was lost." (*Id.* at 5). Defendants allege that the shop lost "between $40,000 and $50,000 due to the inability to generate business due in large part to the absence of materials, paint, training, signage, and advertising promised by Maaco." (*Id.* at 8). Ghirimoldi claims that Maaco did not provide signs until August 2012 and failed to provide paint for two weeks after the opening, forcing Defendants to turn away customers. (*Id.* at 5).

While Maaco contests some, but not all, of Defendants' allegations, the Court is convinced that Defendants have raised sufficient factual allegations which, if true, may support a material breach of the Franchise Agreement by Maaco. Consequently, Maaco has failed to demonstrate it is likely to succeed on the merits of its breach of contract claim. Because the Court finds Defendants' argument regarding material breach by Maaco persuasive, it is unnecessary to consider Defendants' other arguments regarding alleged fraudulent inducement and the scope of the covenant not to compete.

### C. Balance of Hardships

"With plaintiff failing to make the required showing of irreparable harm, the balance of equities necessarily does not tip in his favor." *Martin v. Bimbo Foods Bakeries Distribution, Inc.*, 2014 WL 2439954, at *7 (E.D.N.C. May 30, 2014). Because Maaco has not demonstrated that it is likely to suffer irreparable harm due to Defendants' alleged trademark infringement or breach of contract, the balance of hardships tips in favor of Defendants. As noted above, Maaco waited almost two-and-a-half years to file this lawsuit, during which time Defendants operated their business continuously less than five miles away from another Maaco franchise location. Should an injunction be granted, Defendants would be forced to cease operations after spending the past two-and-a-half years building their own brand and customer base. This represents a significant

hardship to which Defendants should not be subjected unless Maaco is truly suffering irreparable harm.

Even if Maaco had sufficiently demonstrated a likelihood of success on the merits and irreparable harm, its delay for two-and-a-half years in filing this action results in the balance of hardships falling in favor of Defendants. While Maaco argues that any prejudice to the Defendants' interests would be self-inflicted harm and should be therefore disregarded, the Fourth Circuit has explicitly rejected the notion that self-inflicted harm should be given less weight in preliminary injunction proceedings. *See Scotts Co.,* 315 F.3d at 284. Furthermore, the Fourth Circuit held in *Candle Factory, Inc. v. Trade Associates Grp., Ltd.* "that any delay attributable to plaintiffs in initiating a preliminary injunction request, coupled with prejudicial impact from the delay, should be considered when the question of irreparable harm to plaintiffs is balanced against harm to defendants." 23 F. App'x 134, 138 (4th Cir. 2001). As a result of Maaco's delay, the hardship that will be suffered by Defendants is much greater today than it would have been two-and-a-half years ago. Because of Maaco's delay in filing this action and failure to adequately demonstrate it is suffering irreparable harm, the balance of hardships tips decidedly in favor of Defendants.

**D. Public interest**

Maaco has failed to demonstrate that it is likely to succeed on the merits of either of its claims, that it has suffered or is likely to suffer irreparable harm, and that the balance of hardships falls in its favor. Preliminary injunctions are extraordinary remedies, and the public interest is not served by granting one where a party does not meet its burden. In the unlikely event that Maaco does succeed on its claims at trial, the parties' contractual and statutory obligations will ultimately be honored with or without an injunction. As a result, the public interest is not favored by granting a preliminary injunction in this action.

## IV. CONCLUSION

For the foregoing reasons, Maaco is not entitled to a preliminary injunction enjoining Defendants' use of "America Body Shop" or the phone number (602) 252-2455. Maaco is also not entitled to a preliminary injunction enjoining violation of a covenant not to compete in the Franchise Agreement between the parties.

**IT IS THEREFORE ORDERED** that Maaco's Motion for a Preliminary Injunction, (Doc. No. 1), is hereby **DENIED.**

Signed: July 28, 2015

Graham C. Mullen
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.